401-03535-2015

Filed: 8/31/2015 4:51:54 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Kim Sherrin Deputy
Envelope ID: 6730871

CAUSE NO. \_\_\_\_\_-_____-2015

| | | |
|---|---|---|
| ALBERT B. GRECO, JR. | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| VS. | § | |
| | § | |
| Bank of America N.A., LSF9 Mortgage | § | OF COLLIN COUNTY, TEXAS |
| Holdings, LLC, U.S. Bank Trust, N.A | § | |
| as TRUSTEE for LSF9 MASTER | § | |
| PARTICIPATION TRUST and SUMMIT | § | |
| TRUSTEE SERVICES, LLC | § | |
| | § | |
| DEFENDANTS | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, ALBERT B. GRECO, JR., Plaintiff in the above-styled and numbered cause ("Plaintiff") complaining of Bank of America N.A., LSF9 Mortgage Holdings, LLC, U.S. Bank Trust, N.A. as TRUSTEE for LSF9 Master Participation Trust and Summit Trustee Services, LLC ("Defendants"), and for cause of action would respectfully show unto this honorable Court the following:

I.

Plaintiff brings this action pursuant to the Declaratory Judgments Act, Chapter 37 of the Civil Practice and Remedies Code, for a declaration of the invalidity of certain documents, as more particularly described hereinbelow, and claims made by one or more of the Defendants, in order to quiet title to real property in which the Plaintiff has an interest and for breach of contract. Plaintiff seeks monetary relief of $100,000 or less and non-monetary relief in a declaration that the purported lien on his property invalid.

II.

Selection of Discovery Level

Plaintiff asserts that discovery should be conducted in accordance with a Level 2 discovery control plan under Rule 190.3 of the Texas Rules of Civil Procedure.

III

Plaintiff is an individual residing in Collin County, Texas on the real property made the subject of this suit.

Law Offices of
Albert B. Greco, Jr.
Attorneys & Counselors at Law
7107 Schafer Street
Dallas, Texas 75252
Tel. 214-415-7333
Fax. 888-580-4742
ABGRECO@GRECOlaw.com

**EXHIBIT D1**

Defendant Bank of America N.A., is a Financial Institution engaged in business in the State of Texas upon which service of process may be effectuated by serving its Registered Agent, C T Corporation Systems at 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201

Defendant LSF9 Mortgage Holdings, LLC is believed to be a Delaware Limited Liability Company that has its registered business address at 2711 N. Haskell Avenue, Suite 1700, Dallas, TX. 75204 wherein service of process may be effectuated.

Defendant U.S. Bank N.A. is a Financial Institution engaged in business in the State of Texas upon which service of process may be effectuated by serving its Registered Agent, C T Corporation Systems at 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201

Defendant Summit Trustee Services, LLC is believed to be a Delaware Limited Liability Company upon which service of process may be effectuated by serving its Registered Agent, C T Corporation Systems at 2711 N. Haskell Avenue, Suite 1700, Dallas, TX. 75204.

IV.

Jurisdiction and Venue

Jurisdiction and Venue are proper in the district courts of Collin County, Texas as the real property made the subject of this suit and upon which the purported lien has been filed is situated in Collin County, Texas. The real property affected by the purported lien is commonly known as 7107 Schafer Street, Dallas, Texas 75252 with a legal description as set forth on Exhibit A attached hereto.

V

Plaintiff's Interest in the Subject Real Property

Plaintiff is the owner of the real property made the subject of this suit, having acquired title in fee simple pursuant to that certain warranty deed dated 6/4/1986, recorded 6/25/86 in Deed Book 2395, at Page 373 of the Collin County, Texas Public Registry, and being document numbered 198606240000372550. Plaintiff has continuously lived at said address, which has been his residence and homestead from the date of purchase through the present.

*Law Offices of*
**Albert B. Greco, Jr.**
*Attorneys & Counselors at Law*
7107 Schafer Street
Dallas, Texas 75252
Tel. 214-415-7333
Fax. 888-580-4742
ABGRECO@GRECOlaw.com



VI

Defendants' Claim that is a Cloud on Plaintiff's Title

One or more of the Defendants, or their predecessors in interest, filed a purported deed of trust that appears on its face to be valid, but for the reasons stated below is not valid. Moreover, the lien is not merely voidable, it is, for said reasons, void *ab initio*. A true and correct copy of the purported deed of trust is attached hereto as exhibit B.

VII

Invalidity of Defendants' Claim.

The purported Deed of Trust was not executed by Plaintiff or anyone with authority to act on his behalf or such documents were altered subsequent to execution. The purported signatures on each of the Homestead Lien Contract, Voluntary Homestead Designation and Promissory Note that comprise the basis for interest Defendants' claim by the subject Deed of Trust, are materially different than Plaintiff's usual and customary signature and, of greater significance, Plaintiff has never executed any documents in the presence of Karen K. Stout, notary public or acknowledged his signature on any such documents to her or any other notary public, therefore the purported Acknowledgement on the face of each document is false. Because Plaintiff, as the sole owner of the fee simple interest in the real property did not execute the purported Deed of Trust and no other person was authorized to execute any such document on Plaintiff's behalf, no interest in Plaintiff's real property could have passed thereunder. Even if Plaintiff had executed the purported document, the unilateral altering of the document to materially change the effect and legal significance of the signatures thereon would render the document void. Without the fictitious notarization appearing on the face of the purported Deed of Trust, the document would not have been in proper form to be filed among the deed or real property records of Collin County, Texas and therefore would not exist as a cloud on Plaintiff's title.

Plaintiff does not deny executing documents in connection with a loan from Bank of America N.A., however, any purported lien against plaintiff's interest in the subject property as a result of the transactions Defendants base their claims would be invalid as the transaction represented by the documents Defendant rely on in support of their claims could not encumber the subject real property as the purported lien would violate the provisions of Article XIV §50 of the Texas Constitution. Among other things, the

Law Offices of
Albert B. Greco, Jr.
Attorneys & Counselors at Law
7107 Schafer Street
Dallas, Texas 75252
Tel. 214-415-7333
Fax. 888-580-4742
ABGRECO@GRECOlaw.com

principal loan amount, as set forth on the face of the Promissory Note that the lien purports to secure, was, at the time the loan was made, an amount equal to or in excess of the 100% of the fair market value of the real property (including all improvements) purportedly encumbered thereby in violation of Article XVI, 50 (a) (6) (B) of the Texas Constitution.  In addition, Plaintiff never completed or submitted any loan application, was never provided any of the requisite NOTICE CONCERNING EXTENSIONS OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION as required by Article XIV §50(g), therefore the loan transaction violated the provisions of Article XIV §50(a)M(i), because the loan was closed without the benefit of the 12 day reflection period, which cannot be cured except by a refinance of the original loan.  In fact none of the formal requirements under Article XIV §50(a) were met, other than the fact that the closing took place in an attorney's office which was completely fortuitous because the loan officer that brought the documents to Plaintiff's office for execution was unaware that plaintiff was in fact and attorney.  The only documents executed by Plaintiff were brought to Plaintiff's office by a gentleman that Plaintiff had never previously met but who Plaintiff believed to be employed by the bank as a loan officer, whose name, Plaintiff is unable to recall.  To Plaintiff's knowledge, he had never spoken with the gentleman prior to said meeting, other than possibly for the sole purpose of coordinating the time for said meeting.  Said individual appeared at Plaintiff's office unaccompanied and was ushered into the conference room.  When Plaintiff joined him in the conference room, the gentleman withdrew certain documents from his briefcase and slid them across the table to the Plaintiff for his signature.  Plaintiff signed such documents then slid the executed documents back across the conference room table to him.  As the gentleman was depositing the documents back into his briefcase, Plaintiff asked when his loan would be funded and the gentleman withdrew a checkbook from his briefcase and tossed it on the table in front of Plaintiff stating that he funded the loan before he left the bank and that the balance of the loan proceeds, after deducting the $2,000 fee, were in the account and accessible by writing one or more checks drawn on said account.  The entire exchange from when Plaintiff entered the conference room until the gentleman departed from Plaintiff's offices was concluded in approximately five to seven minutes.  No other person was present or met with Plaintiff and the gentleman at any time.  Plaintiff did not acknowledge execution of any such documents to Karen K. Stout or any other notary public at the time he signed them or at any subsequent

Law Offices of
Albert B. Greco, Jr.
Attorneys & Counselors at Law
7107 Schafer Street
Dallas, Texas 75252
Tel. 214-415-7333
Fax. 888-580-4742
ABGRECO@GRECOlaw.com

time thereafter. Furthermore, Plaintiff does not know of any person named Karen K. Stout and, to his knowledge, Plaintiff has never met, spoken with or knowingly been in her presence.

## VIII
### Breach of Contract

Plaintiff made payments to Defendant Bank of America N.A. for approximately seven years. The amount of each such installment was in excess of the amounts required pursuant to the note Plaintiff executed. Although the excess varies from time to time, typically the amount of the total payment was at least $1,000 or 40% more than the required scheduled payment. The additional funds were to be deposited into an escrow account to be used to pay property tax obligations incurred by Plaintiff and other expenditures as might have been required. Despite Plaintiff's payment of all escrow or additional funds as requested by Defendant Bank of America, said Defendant failed to timely pay Plaintiff's property tax obligations thereby subjecting Plaintiff to unnecessary additional obligations for penalties, interest and late fees Plaintiff otherwise would not have incurred. The Defendants failure to timely discharge such obligations resulted in litigation filed against the Plaintiff for collection of past due taxes, which was served on Plaintiff on September 11, 2013. As a result of such litigation, Plaintiff, in addition to penalties and interest, was forced to incur additional amounts for court costs and attorneys fees. Plaintiff believes that all such additional amounts were added to the balance due under his loan thereby increasing the amounts purportedly secured by the invalid deed of trust, creating a greater cloud on his title. Plaintiff alleges that be collecting funds to be utilized to discharge the Plaintiff's property tax obligations, Defendant had the duty to timely pay such amounts and protect Plaintiff from the exposure to increased obligations as a result of the failure to timely discharge such obligations. Defendant's failure to do so caused Plaintiff damages in an amount within the jurisdictional limits of this court and within the limitations stated by Plaintiff in paragraph I hereinabove, but that are unascertainable by Plaintiff at this time for which plaintiff hereby sues.

Law Offices of
**Albert B. Greco, Jr.**
Attorneys & Counselors at Law
7107 Schafer Street
Dallas, Texas 75252
Tel. 214-415-7333
Fax. 888-580-4742
ABGRECO@GRECOlaw.com



Wherefore, Plaintiff respectfully requests that the defendants be cited to appear and answer herein and upon final hearing hereof, the Plaintiff be awarded judgment as follows:

1) A declaration that the deed of trust attached hereto as Exhibit "B" purporting to evidence a lien on the subject real property is invalid, unenforceable and of no force or effect with an order that it be removed from the title to said property and quieting title in the Plaintiff;

2) Absent an agreement by the parties to terms of refinancing in compliance with Texas Constitution Article XVI, § 50(a), a declaration that the Defendants have forfeited all amounts due under the promissory note executed by Plaintiff; and

3) Awarding the Plaintiff judgment against the Defendants for his contract damages in the amount to be determined including attorney's fees and all costs of suit, together with all such other and further relief, whether general or special, both at law and in equity, to which he may be justly entitled.

Respectfully submitted,
LAW OFFICES OF ALBERT B. GRECO, JR
7107 Schafer Street
Dallas, Texas 75252
Telephone No. (214) 415-7333
Facsimile No.  (888) 580-4742

ALBERT B. GRECO, JR.
Attorney for Plaintiff
SBOT Card No. 08347100
ABGreco@GRECOlaw.com

Law Offices of
Albert B. Greco, Jr.
Attorneys & Counselors at Law
7107 Schafer Street
Dallas, Texas 75252
Tel. 214-415-7333
Fax. 888-580-4742
ABGRECO@GRECOlaw.com



# EXHIBIT A



Exhibit A (Legal Description)

ALL OF THE FOLLOWING DESCRIBED REAL PROPERTY IN COLLIN COUNTY, TEXAS, TO-WIT:

BEING LOT 12, IN BLOCK N/8727 OF PRESTON ROAD HIGHLANDS ADDITION, AN ADDITION TO THE CITY OF DALLAS, TEXAS ACCORDING TO THE REVISED MAP THEREOF RECORDED IN VOLUME 2, PAGE 9 OF THE MAP RECORDS OF COLLIN COUNTY, TEXAS.

Being that parcel of land conveyed to Albert B. Greco, Jr. from Charles C. Fichtner, II, a single man by that deed dated 06/04/1986 and recorded 06/25/1986 in Deed Book 2395, at Page 373 of the COLLIN County, TX Public Registry.

Tax Map Reference: 195933



Filed and Recorded
Official Public Records
Brenda Taylor, County Clerk
Collin County, TEXAS
11/20/2006 01:08:26 PM
$40.00 TFOSTER
20061120000164590



# EXHIBIT
# B



WHEN RECORDED MAIL TO:
Bank of America Consumer Collateral Tracking, FL9-700-04-12
9000 Southside Blvd, Bldg 700
Jacksonville, FL 32256

———————————————————————————— SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## HOMESTEAD LIEN CONTRACT AND DEED OF TRUST

THE EXTENSION OF CREDIT EVIDENCED BY THIS HOMESTEAD LIEN CONTRACT AND DEED OF TRUST IS THE TYPE OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION.

THIS HOMESTEAD LIEN CONTRACT AND DEED OF TRUST dated October 16, 2006, is made and executed between ALBERT B GRECO JR, AN UNMARRIED PERSON (referred to below as "Owner") and Bank of America N.A., whose address is 901 Main St., 67th Floor, Dallas, TX 75202 (referred to below as "Lender").

GRANT OF LIEN. For valuable consideration, Owner grants a lien under Section 50(a)(6), Article XVI, Texas Constitution in and to the following described real property, together with all improvements, all proceeds (including without limitation premium refunds) of each policy of insurance relating to any of the improvements, or the Real Property; and all easements, rights of way, and appurtenances; all water and water rights, and all other rights, royalties, and profits relating to (the "Real Property") located in COLLIN County, State of Texas:

See Exhibit A, which is attached to this Homestead Lien Contract and made a part of this Homestead Lien Contract as if fully set forth herein.

The Real Property or its address is commonly known as 7107 SCHAFER ST, DALLAS, TX 75252-5819. The Real Property tax identification number is 196933.

Owner conveys the Real Property to Trustee in trust for the benefit of Lender as hereinafter set forth.

THIS HOMESTEAD LIEN CONTRACT AND DEED OF TRUST IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS HOMESTEAD LIEN CONTRACT AND DEED OF TRUST. THIS HOMESTEAD LIEN CONTRACT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

HOMESTEAD PROPERTY. Owner represents to Lender that the Property is Owner's homestead. If a part of the Property is not now, or at any time in the future is determined not to be, Owner's homestead, Lender hereby disclaims any lien on such non-homestead property, it being Lender's intention to obtain a lien, as provided for by Section 50(a)(6), Article XVI, Texas Constitution, in Owner's homestead property only. If the Property, as a whole, is determined not to be Owner's homestead, this lien shall be governed by other applicable Texas law.

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Homestead Lien Contract, Owner shall pay to Lender all amounts secured by this Homestead Lien Contract as they become due and shall strictly perform all of Owner's obligations under this Homestead Lien Contract.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Owner agrees that Owner's possession and use of the Property shall be governed by the following provisions:

Duty to Maintain. Owner shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Nuisance, Waste. Owner shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Owner will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent. This restriction will not apply to rights and easements (such as gas and oil) not owned by Owner and of which Owner has informed Lender in writing prior to Owner's signing of this Homestead Lien Contract.

Removal of Improvements. Owner shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Owner to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

Lender's Right to Enter. Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Owner's compliance with the terms and conditions of this Homestead Lien Contract.





**Compliance with Governmental Requirements.** Owner shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Owner may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Owner has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Owner to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Owner agrees neither to abandon or leave unattended the Property. Owner shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE – CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Homestead Lien Contract upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Texas law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Homestead Lien Contract.

**Payment.** Owner shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Owner shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Homestead Lien Contract, except for the lien of taxes and assessments not due and except as otherwise provided in this Homestead Lien Contract.

**Right to Contest.** Owner may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Owner shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Owner has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and Lender's reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Owner shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Owner shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Owner shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Owner shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Owner will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Owner can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Homestead Lien Contract:

**Maintenance of Insurance.** Owner at Lender's request shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Owner shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Owner or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Owner agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Owner shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $10,000.00. Lender may make proof of loss if Owner fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Owner shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Owner from the proceeds for the reasonable cost of repair or restoration if Owner is not in default under this Homestead Lien Contract. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Homestead Lien Contract, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Owner as Owner's interests may appear.

**LENDER'S EXPENDITURES.** If Owner fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Owner's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. To the extent permitted by applicable law, all expenses paid by Lender for such purposes will then bear interest at the Note rate from the date paid by Lender to the date of repayment by Owner. To the extent permitted by applicable law, all such expenses will become a part of the Indebtedness and, at Lender's option, will be payable on demand. The Homestead Lien Contract also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.


**HOMESTEAD LIEN CONTRACT AND DEED OF TRUST**
**(Continued)**

Loan No: _____                                                                                                          Page 3

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Homestead Lien Contract:

**Title.** Owner warrants that: (a) Owner holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Homestead Lien Contract, and (b) Owner has the full right, power, and authority to execute and deliver this Homestead Lien Contract to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Owner warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Owner's title or the interest of Lender under this Homestead Lien Contract, Owner shall defend the action at Owner's expense. Owner may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Owner will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Owner warrants that the Property and Owner's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**CONDEMNATION, JUDGMENTS AND AWARDS.** The following provisions relating to condemnation proceedings, judgments, decrees and awards for injury to the Property are a part of this Homestead Lien Contract:

**Application of Net Proceeds.** To the extent permitted by applicable law, all judgments, decrees and awards for injury or damage to the Property, or any part of the Property, and awards pursuant to proceedings for condemnation of the Property, are hereby absolutely assigned to Lender, and if all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award, judgment or decree shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**Proceedings.** If any proceeding in condemnation is filed, Owner shall promptly notify Lender in writing, and Owner shall promptly take such steps as may be necessary to defend the action and obtain the award. Owner may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Owner will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Homestead Lien Contract:

**Current Taxes, Fees and Charges.** Upon request by Lender, Owner shall execute such documents in addition to this Homestead Lien Contract and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. To the extent permitted by applicable law, Owner shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Homestead Lien Contract, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Homestead Lien Contract.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Homestead Lien Contract or upon all or any part of the Indebtedness secured by this Homestead Lien Contract; (2) a specific tax on Owner which Owner is authorized or required to deduct from payments on the Indebtedness secured by this type of Homestead Lien Contract; (3) a tax on this type of Homestead Lien Contract chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Owner.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Homestead Lien Contract, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Owner either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Homestead Lien Contract:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Owner will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Owner's obligations under the Note, this Homestead Lien Contract, and the Related Documents, and (2) the liens and security interests created by this Homestead Lien Contract as first and prior liens on the Property, whether now owned or hereafter acquired by Owner. Unless prohibited by law or Lender agrees to the contrary in writing, Owner shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** To the extent permitted by applicable law, if Owner fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Owner and at Owner's expense. For such purposes, Owner hereby irrevocably appoints Lender as Owner's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Owner pays all the Indebtedness, including without limitation all future advances, when due, and otherwise performs all the obligations imposed upon Owner under this Homestead Lien Contract, Lender shall execute and deliver to Owner a suitable satisfaction of this Homestead Lien Contract. Owner will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**DEFAULT.** At Lender's option, Owner will be in default under this Homestead Lien Contract if any of the following happen:

**Payment Default.** Owner fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Owner within the time required by this Homestead Lien Contract to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.



**Break Other Promises.** Owner fails to timely and strictly perform all promises made to Lender contained in this Homestead Lien Contract or in an agreement related to this Homestead Lien Contract.

**False Statements.** Any representation or statement made or furnished to Lender by Owner or on Owner's behalf under this Homestead Lien Contract or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Homestead Lien Contract or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected lien) at any time and for any reason.

**Death or Insolvency.** The death of Owner, the insolvency of Owner, the appointment of a receiver for any part of Owner's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Owner.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property. However, if Owner disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Owner gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Right to Cure.** If such a failure is curable, it may be cured if Owner, after Lender sends written notice demanding cure of such failure: (a) cures the failure within twenty (20) days; or (b) if the cure requires more than twenty (20) days, immediately initiates steps sufficient to cure the failure and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** After giving any required notice of default and after Owner's failure to cure the default during any required cure period, Lender may declare due the entire indebtedness.

**Foreclosure By Court Order Only.** If Lender forecloses upon the lien granted in this Homestead Lien Contract, Lender will comply with the applicable rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings as those rules may change from time to time, or Lender may exercise such other remedy as may be available to Lender for loans made pursuant to the authority of Section 50(a)(6), Article XVI of the Texas Constitution. When Lender has complied with the appropriate procedures to obtain permission to foreclose pursuant to Section 51.002 of the Texas Property Code, as it may be amended from time to time, Lender may request the Trustee to foreclose by power of sale and the Trustee shall do so consistent with the rules of civil procedure and Section 51.002 of the Texas Property Code. The Trustee shall have all the powers granted to a trustee under the terms of Section 51.002 of the Texas Property Code and all amendments thereto and all other rights and remedies that are now available to or may hereafter be granted to Trustee to the extent such rights and remedies are consistent with loans made pursuant to the authority of Section 50(a)(6), Article XVI of the Texas Constitution. Lender may appoint in writing a substitute or successor Trustee, succeeding to all rights and responsibilities of Trustee. If an Event of Default occurs, and after court order, Trustee, if requested by Lender to foreclose the lien, the Trustee shall: (1) either personally or by agent, give notice of the foreclosure sale as required by the Texas Property Code as then amended; (2) sell and convey all or part of the Property to the highest bidder for cash with a general warranty deed binding Owner, subject to prior liens and to other exceptions in conveyances and warranty; and (3) from the proceeds of the sale, pay in order: (a) expenses of foreclosure; (b) to Lender the full amount of principal, interest and other permitted charges; (c) any amounts required by law to be paid before payments to Owner; and (d) to Owner any balance.

**No Deficiency Judgment.** Lender shall not obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Rights and Remedies on Default section unless the Indebtedness was obtained by Owner by actual fraud.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Homestead Lien Contract or the Note or available at law or in equity.

**Cure Notice.** Owner acknowledges and agrees that Article XVI, Section 50(a)(6)(Q)(x) of the Texas Constitution provides Lender and any holder of this Homestead Lien Contract with the right to correct a failure to comply with Lender's or holder's obligations under the extension of credit. A notice of non-compliance with applicable law to Lender or the holder of this Homestead Lien Contract may be in writing and mailed to:

    Bank of America, N.A.
    Attn: Portfolio Administration
    P.O. Box 26865
    Richmond, VA 23261-9914

or to a different address if Owner is given notice pursuant to this Homestead Lien Contract of that different address.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Owner's obligations under this Homestead Lien Contract, after Owner's failure to do so, that decision by Lender will not affect Lender's right to declare Owner in default and to exercise Lender's remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Homestead Lien Contract, Lender shall be entitled to recover such sum as the court may adjudge reasonable as Lender's attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Owner also will pay any court costs, in addition to all other sums provided by law. In the event of foreclosure of this Homestead Lien Contract, Lender shall be entitled to recover from Owner Lender's reasonable attorneys' fees and actual disbursements that Lender necessarily incurs in pursuing such foreclosure.



**HOMESTEAD LIEN CONTRACT AND DEED OF TRUST**
(Continued)

Loan No:                                                           Page 5

**NOTICES.** Any other notice required to be given under this Homestead Lien Contract shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Homestead Lien Contract. Any person may change his or her address for notices under this Homestead Lien Contract by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Owner agrees to keep Lender informed at all times of Owner's current address. Unless otherwise provided or required by law, if there is more than one Owner, any notice given by Lender to any Owner is deemed to be notice given to all Owners. It will be Owner's responsibility to tell the others of the notice from Lender.

**INSURANCE.** Notwithstanding any language to the contrary in this Homestead Lien Contract or in any Related Document, if this Homestead Lien Contract secures an extension of credit pursuant to Section 50(a)(6), Article XVI, Texas Constitution, Lender does not require fire insurance with standard extended coverage endorsements on the property. However, if as of the date of this Homestead Lien Contract, Owner has in force such insurance on the Property, then all such policies covering loss or damage to the Property shall include a standard non-contributory mortgagee clause in favor of Lender.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Homestead Lien Contract:

   **Amendments.** What is written in this Homestead Lien Contract and in the Related Documents is Owner's entire agreement with Lender concerning the matters covered by this Homestead Lien Contract. To be effective, any change or amendment to this Homestead Lien Contract must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

   **Governing Law.** This Homestead Lien Contract will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Homestead Lien Contract has been accepted by Lender in the State of Texas.

   **Caption Headings.** Caption headings in this Homestead Lien Contract are for convenience purposes only and are not to be used to interpret or define the provisions of this Homestead Lien Contract.

   **Merger.** There shall be no merger of the interest or estate created by this Homestead Lien Contract with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

   **No Waiver by Lender.** Owner understands Lender will not give up any of Lender's rights under this Homestead Lien Contract unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Owner will not have to comply with the other provisions of this Homestead Lien Contract. Owner also understands that if Lender does consent to a request, that does not mean that Owner will not have to get Lender's consent again if the situation happens again. Owner further understands that just because Lender consents to one or more of Owner's requests, that does not mean Lender will be required to consent to any of Owner's future requests. Owner waives presentment, demand for payment, protest, notice of dishonor, notice of intent to accelerate, and notice of acceleration.

   **Savings Clause.** It is agreed that notwithstanding any provision of this Homestead Lien Contract to the contrary, in no event shall this Homestead Lien Contract require or permit any action which would be prohibited by Section 50(a)(6), Art. XVI, Texas Constitution, and all provisions of this Homestead Lien Contract shall be modified to comply fully with Section 50(a)(6), Art. XVI, Texas Constitution. In particular, this section means (among other things) that Owner does not agree or intend to pay, and Lender does not agree or intend to contract for, charge or collect, any amount in the nature of a fee or charge for the Indebtedness which would in any way or event cause Lender to charge or collect more for extension of credit than the maximum Lender would be permitted to charge or collect by the laws of the State of Texas.

   **Severability.** If a court finds that any provision of this Homestead Lien Contract is not valid or should not be enforced, that fact by itself will not mean that the rest of this Homestead Lien Contract will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Homestead Lien Contract even if a provision of this Homestead Lien Contract may be found to be invalid or unenforceable.

   **Successors and Assigns.** Subject to any limitations stated in this Homestead Lien Contract on transfer of Owner's interest, this Homestead Lien Contract shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Owner, Lender, without notice to Owner, may deal with Owner's successors with reference to this Homestead Lien Contract and the Indebtedness.

   **Time is of the Essence.** Time is of the essence in the performance of this Homestead Lien Contract.

   **Waive Jury.** All parties to this Homestead Lien Contract hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following words shall have the following meanings when used in this Homestead Lien Contract:

   **Borrower.** The word "Borrower" means ALBERT S GRECO JR.

   **Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Homestead Lien Contract in the default section of this Homestead Lien Contract.

   **Homestead Lien Contract.** The words "Homestead Lien Contract" mean this Homestead Lien Contract and Deed of Trust between Owner and Lender.

   **Improvements.** The word "Improvements" means all existing and future improvements, fixtures, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

   **Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Owner's obligations or expenses incurred by Lender to enforce Owner's obligations under this Homestead Lien Contract, together with interest on such amounts as provided in this Homestead Lien Contract.

   **Lender.** The word "Lender" means Bank of America, N.A., its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.



**HOMESTEAD LIEN CONTRACT AND DEED OF TRUST**
(Continued)

Loan No:                                                                      Page 6

**Note.** The word "Note" means the note or credit agreement dated October 16, 2006, in the principal amount of $208,000.00 from ALBERT B GRECO JR to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Owner.** The word "Owner" means ALBERT B GRECO JR. The words "Owner" and "Borrower" are used interchangeably.

**Property.** The word "Property" means collectively the Real Property and the Improvements. Notwithstanding language in any other agreement with Lender by Owner, the indebtedness is secured by the Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Homestead Lien Contract.

**Related Documents.** The words "Related Documents" mean all promissory notes, loan agreements, environmental agreements, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

**Trustee.** The word "Trustee" means PRLAP, INC. whose address is 901 MAIN ST., DALLAS, TX 76202-3714 and any substitute or successor trustees.

OWNER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS HOMESTEAD LIEN CONTRACT, AND OWNER AGREES TO ITS TERMS. OWNER ACKNOWLEDGES THAT ALL BLANKS WERE FILLED IN PRIOR TO OWNER SIGNING THIS HOMESTEAD LIEN CONTRACT. OWNER FURTHER ACKNOWLEDGES THAT OWNER RECEIVED A COPY OF THE DISCLOSURES REQUIRED BY SECTION 50(g), ARTICLE XVI, TEXAS CONSTITUTION, AT LEAST 12 DAYS PRIOR TO THE DATE OF THIS HOMESTEAD LIEN CONTRACT.

OWNER:

X _____
ALBERT B GRECO JR

---

**INDIVIDUAL ACKNOWLEDGMENT**

STATE OF _Texas_         )
                                )SS
COUNTY OF _Dallas_    )

This instrument was acknowledged before me on _Oct. 16_, 20_06_ by ALBERT B GRECO JR.

_Karen K. Stout_
Notary Public, State of Texas

KAREN K. STOUT
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 11-26-09



**Exhibit A (Legal Description)**

ALL OF THE FOLLOWING DESCRIBED REAL PROPERTY IN COLLIN COUNTY, TEXAS, TO-WIT:

BEING LOT 12, IN BLOCK N/8727 OF PRESTON ROAD HIGHLANDS ADDITION, AN ADDITION TO THE CITY OF DALLAS, TEXAS ACCORDING TO THE REVISED MAP THEREOF RECORDED IN VOLUME 2, PAGE 9 OF THE MAP RECORDS OF COLLIN COUNTY, TEXAS.

Being that parcel of land conveyed to Albert B. Greco, Jr. from Charles C. Fichtner, II, a single man by that deed dated 06/04/1986 and recorded 06/25/1986 in Deed Book 2395, at Page 373 of the COLLIN County, TX Public Registry.

Tax Map Reference:  195933



